UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x **MEMORANDUM AND ORDER**

OLIVER T. TOOKES, 08-CV-1060 (FB) (RLM)

        Plaintiff,

  -against-

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

        Defendant.
-----------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                                *For the Defendant:*
ERIC TURKEWITZ                     KARLA D. DENALLI
The Turkewitz Law Firm             The Port Authority of New York and
228 East 45th Street, 17th Floor      New Jersey
New York, NY 10017                 225 Park Avenue South, 13th Floor
                                                 New York, NY 10003

**BLOCK, Senior District Judge:**

        Following a three day jury trial, Oliver T. Tookes ("Tookes") was awarded damages for injuries sustained after he fell through a grate on the grounds of the Port Authority of New York and New Jersey's ("Port Authority") Bayonne Bridge Tollhouse. Finding that the Port Authority's negligence was a substantial factor in causing Tookes' injuries, the jury awarded him $300,000 in lost earnings, $50,000 in past non-economic damages, and $400,000 in future non-economic damages. The jury also determined that Tookes' negligence was a substantial factor in causing his injuries, finding him 40 percent at fault. The court instructed the jury not to take into account Tookes' comparative fault in calculating the damages award.

        The Port Authority subsequently moved for a collateral source hearing pursuant

to New York Civil Practice Law and Rules ("CPLR") § 4545(a) to determine whether the jury's award for lost wages could be reduced by the amount of Social Security disability benefits Tookes has and will receive. By written order the Court found that the Port Authority was entitled to a hearing and capped the maximum set-off at $226,248.[1] The parties subsequently attended a status conference where they agreed that a hearing was not necessary, and that they would instead submit briefs with respect to the proper set-off amount so as to enable the Court to enter a final judgment. The Port Authority has provided documents supporting a $92,794.40 set-off. Tookes, however, persists in arguing that a set-off of any amount is inappropriate. For the reasons stated below, the Court finds that the Port Authority is entitled to the requested $92,794.40 set-off.

# I

This case was brought pursuant to federal diversity jurisdiction, and New York's choice of law dictates that New York substantive law applies. *See O'Rourke v. E. Air Lines, Inc.*, 730 F.2d 842, 847 (2d Cir.1984) (New York law applies in tort actions where alleged tort occurred in New York and federal jurisdiction is based on diversity). New York law provides that:

> In any action brought to recover damages for personal injury . . . where the plaintiff seeks to recover for the cost of . . . loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source,

---

[1] This number represents the minimum amount the jury could have awarded Tookes for past and future lost wages, after excluding the $73,752 Tookes claimed as lost pension income from the $300,000 lost earnings award.

2

> except for life insurance and those payments as to which there is a statutory right of reimbursement. If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any such collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits.

N.Y. C.P.L.R. § 4545(a). Accordingly, a set-off is permitted where the defendant establishes with "reasonable certainty" that the plaintiff "has received, or will receive, payments from a collateral source," and that these collateral source payments "specifically correspond to particular items of economic loss awarded by the trier of fact." *Kihl v. Pfeffer*, 848 N.Y.S.2d 200, 207-08 (2d Dep't 2007); *see also Oden v. Chemung County Indus. Dev. Agency*, 87 N.Y.2d 81, 87 (1995) (requiring "a direct correspondence between the item of loss and the type of collateral reimbursement.").

The Port Authority has submitted notices sent to Tookes by the Social Security Administration demonstrating his entitlement to long-term disability benefits for the period beginning November 2007, continuing indefinitely. Def's Mem. of Law Exs. A-B. In calculating the requested set-off, the Port Authority has projected Tookes' receipt of such payments until he reaches age sixty-six—at which time, according to Tookes' damages expert Dr. Frank D. Tinari, he will no longer be eligible for disability benefits. *See id.* Ex. 3, at 4.

Tookes first contends that a set-off of these payments against the jury's lost earnings award is inappropriate because his Social Security disability benefits were not a replacement for lost earnings. However, as the Court previously articulated in its order on the Port Authority's motion for a collateral source hearing, "lost wages directly correspond

3

to disability benefits." (Mem. & Order of Aug. 10, 2011 at 11) (citing *Hayes v. Normandie LLC*, 761 N.Y.S.2d 645 , 646 (1st Dep't 2003) ("Social Security payments received by plaintiff . . . were intended to compensate for lost earnings and thus properly treated as collateral source payments . . . .")); *see also Manfredi v. Preston*, 667 N.Y.S.2d 288, 288 (2d Dep't 1998) (finding Social Security disability benefits "correspond[ed] to . . . lost earnings for which [the plaintiff] was awarded damages," and thus constituted collateral source payments)*; Kihl*, 848 N.Y.S.2d at 210-11 (describing the "indefinite payment of Social Security disability payments where plaintiffs are incapable of future work" as sufficient to meet the "reasonable certainty standard.").

Tookes next argues against a set-off because the jury's lost earnings award did not differentiate between past and future lost earnings. He asserts that past collateral source payments cannot be used to off-set damages for future lost earnings (and vice versa), and thus a set-off is inappropriate because the "category of loss" for which the collateral source payments represent reimbursement cannot sufficiently be matched to the "category of loss" for which the jury awarded damages. While Tookes is correct that "the economic loss portion of an award should be reduced only when the collateral source payment represents reimbursement for a particular *category of loss* that corresponds to a *category of loss* for which damages were awarded," Turnbull v. USAir, Inc., 133 F.3d 184, 187-88 (2d Cir. 1998) (emphases in original) (citation omitted), it is immaterial that the jury did not distinguish between past and future lost earnings. "Lost earnings" constitutes a "category of loss" as delineated by CPLR § 4545(a). *See Turnbull*, 133 F.3d at 187 ("We conclude that a 'category of loss' is lost earnings, and that every dollar of the Social Security disability payments, paid in respect of

4

a period for which the jury awarded lost earnings, is reimbursement to [plaintiff] for the same category of loss."); *see also* CPLR § 4545(a) (discussing "loss of earnings" as a category of loss and permitting a set-off where "any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified" from a collateral source).

The record demonstrates that the jury awarded Tookes damages for the loss of earnings he suffered as a result of injuries sustained while on Port Authority grounds, and that Tookes has received and will continue to receive Social Security disability payments that reimburse him for this same loss of earnings. The Court thus finds that the Port Authority has met its burden of demonstrating with "reasonable certainty" that Tookes' Social Security disability payments correspond to a category of loss for which damages were also awarded. *See Turnbull*, 133 F.3d at 188 ("The necessary correspondence is easily established where—as here—the collateral source payments are for total disability, and the jury award compensates the plaintiff for the same or similar deficits") (citing *Caruso v. Russell P. LeFrois Builders*, 635 N.Y.S.2d 367, 369 (4th Dep't 1995) for the conclusion that Social Security disability benefits were "reasonably certain" to replace lost earnings).

## II

As the Port Authority has met the requirements of CPLR § 4545(a) and demonstrated its entitlement to a set-off, the Court finds that a reduction of the jury's lost earnings award in the amount of $92,794.40 is appropriate. This set-off amount is comprised of Tookes' Social Security disability benefit payments for the following periods: November 2007: $1,254.50; December 2007—February 2008: $3,849.90; January 2010: $1,350.00; and February 2010—January 2015: $86,340.00. In accordance with CPLR § 4545(a), Tookes is

5

entitled to a credit for some of the premiums paid for these Social Security benefits as well as the projected future costs of maintaining such benefits. *See id.* However, he has not submitted any evidence of an entitlement to such credits. *See Corbin v. Grand Union Co.*, 1997 WL 739583, at *9 (S.D.N.Y. Nov. 26, 1997) (finding plaintiff waived right to reimbursement for premium payments made toward insurance where she "presented no evidence of the amount of such premiums.").

After adjusting for the set-off, Tookes' lost earnings award is reduced to $207,205.60, yielding a total damages award of $657,205.60. Taking into account the jury's finding that Tookes was 40 percent at fault, the pre-interest judgment amounts to $394,323.36. *See Rodgers v. 72nd St. Assocs.*, 703 N.Y.S.2d 456, 456 (1st Dep't 2000) ("The deduction for collateral source payments should precede the deduction for comparative fault."). The Clerk of Court is directed to enter judgment in the amount of $458,592.67, consisting of $394,323.36 in damages plus prejudgment interest of $64,269.31, calculated from December 10, 2010 to October 2, 2012. *See Schipani v. McLeod*, 541 F.3d 158, 164-65 (2d Cir. 2008) ("In a diversity case, state law governs the award of prejudgment interest"); CPLR §§ 5002, 5004 (providing for nine percent interest from the date of verdict to date of entry of final judgment). Interest on the judgment amount shall further accrue as provided for by 28 U.S.C. § 1961. *See Schipani*, 541 F.3d at 164-65 ("In contrast [to prejudgment interest], postjudgment interest is governed by federal statute.").

**SO ORDERED.**  /s/ Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 2, 2012