UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
OLIVER T. TOOKES,

        Plaintiff,        **MEMORANDUM AND ORDER**
                                      No. 08-CV-1060-FB-RLM

  -against-

THE PORT AUTHORITY OF NEW
YORK AND NEW JERSEY,

        Defendant.
---------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                      *For the Defendant:*
ERIC TURKEWITZ, ESQ.            KARLA D. DENALLI
228 East 45th Street, 17th Floor      225 Park Avenue South, 13th Floor
New York, New York 10017          New York, New York 10003

**BLOCK, Senior District Judge:**

      As the prevailing party in this litigation, *see Tookes v. Port Auth. of N.Y. & N.J.*, 545 F. App'x 27 (2d Cir. 2013) (summary order), Oliver Tookes is entitled to recover costs. He sought $27,050.89, of which the Clerk taxed $13,232.90. He appeals the reduction in the two respects set forth below.[1]

---

[1] Tookes concedes that his appeal was untimely under Federal Rule of Civil Procedure 54(d)(1). Given the minimal delay and the complete lack of prejudice to the Port Authority, the Court excuses the untimeliness. *See* Fed. R. Civ. P. 6(b)(1)(B).

### 1. Photographs

The single biggest line item on Tookes's bill of costs is $12,950 paid to forensic metallurgist Karl Puttlitz, Ph.D. According to Dr. Puttlitz's declaration, he took 11 rolls of film of the failed grate to "document[] the rusted ends and welds of the grate." ¶ (1), and eight rolls of film of the pit covered by the grate at the time of the accident to "visualize . . . the rusted remains of the grate as it lay over the pit, as well as the support structures that the failed grate sat upon." ¶ (2). In addition to taking photographs, Dr. Puttlitz took notes and constructed "photo analysis posters." He then used the photographs and posters "to conduct [his] preliminary analysis that included choosing which of the many photographs would be most useful to the jury." ¶ (3). Dr. Puttlitz avers that he did "not include the additional (and substantial) costs of [his] time preparing for trial." ¶ (7).

All told, Dr. Puttlitz spent 37 hours on the project. To this he added $685 for out-of-pocket costs incurred traveling to the sites of the grate and pit and developing the film, as well as $250 for an assistant to help with the presentation at trial. Tookes's counsel added a further $310 for the costs of a state-court action to gain access to the grate. The Clerk taxed only $6,000 of the total on the ground that not all of the photographs were used at trial.

28 U.S.C. § 1920(4) allows as taxable costs "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily

obtained for use in the case[.]" In *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 687 F.2d 626 (2d Cir. 1975), the Second Circuit listed numerous types of trial exhibits taxable under § 1920(4), including statistical and computer models, maps, aerial photographs, surveys and technical drawings. It then held that "[t]he cost of producing transcripts of a flight recorder tape and of similar tapes for trial . . . fits within this category and is exemplification for purposes of [§] 1920(4)." *Id.* at 631.

Significantly, the circuit court held that the taxable costs of exemplification "includ[ed] such research and analysis as is reasonably necessary for such preparation." *Id.* It cautioned, however, that "the expense of an expert's research and analysis in preparing for trial, as distinguished from producing an exhibit, is not a recoverable cost." *Id.* Thus, it instructed district courts to "scrutinize" research expenses for improper attempts "to recover as costs the former under the guise of the latter." *Id.*

The need for expert assistance in preparing the types of exhibits listed in *In re Air Crash Disaster* is straightforward. By contrast, the need for metallurgical expertise in the taking of photographs is not apparent, and Dr. Puttlitz's declaration offers little in the way of explanation. Granted, there was likely some expertise needed to determine which details of the grate and pit to photograph, but the Court cannot credit that Dr. Puttlitz spent nearly a full work week on that task alone. To

the contrary—and notwithstanding his conclusory assertion that he did not include time for trial preparation—Dr. Puttlitz spent time choosing "which of the many photographs would be most useful to the jury," and preparing "photo analysis posters" to help the jury understand what those photographs depicted. While the Court does not accuse either Dr. Puttlitz or Tookes's counsel of intentional deception, this is precisely why the Court must carefully scrutinize these types of costs. Deciding which pictures to use was, in effect, preparation for trial. And whatever information Dr. Puttlitz meant his posters to convey was information that would otherwise have come from him on the witness stand. In neither case should categorizing the activity as time spent preparing exhibits be determinative.

The Court is aware that its reasoning differs from the Clerk's. However, the $6,000 taxed by the Clerk, less out-of-pocket expenses, is sufficient to compensate Dr. Puttlitz for just over 13 hours of his time. The Court is satisfied that that amount of time more than adequately covers the need for his metallurgical expertise in the taking of the photographs. Indeed, it may well be the case that even less time would suffice. The Port Authority, however, has not sought a further reduction, and the Court sees no reason to consider one *sua sponte*.

### 2. Medical Illustrations

Tookes sought a total of $3,234.68 for three computer-generated illustrations of the injuries to his leg and wrist. The Clerk did not include this cost because

4

Local Rule 56.1(c)(6) requires court approval for taxation of the cost of demonstrative exhibits other than photographs 8"x10" or smaller. The Port Authority asks the Court to withhold its approval because the illustrations "were not necessary for use at trial, because the X-rays which are the original items showing plaintiff's injuries were available." Letter from Karla Denalli, Esq. (Feb. 13, 2014) at 3.

In *DiBella v. Hopkins*, 407 F. Supp. 2d 537 (S.D.N.Y. 2005), then-District Judge Chin concluded that he had the discretion to tax the cost of computer-generated exhibits. *See id.* at 539. He then exercised that discretion in favor of taxation because (1) "blow-ups, digital presentations of scanned documents, and other computer graphics serve the same function as exhibits and other papers used at trial, and there is no logical reason to differentiate between the former and the latter in terms of their taxability as costs," *id.* at 540, and (2) "'the use of technology to improve the presentation of information to the jury and/or to the bench' should be supported." *Id.* (quoting *Tokyo Electron Ariz. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 67 (E.D.N.Y. 2003)).

While both rationales have their limits, the Court agrees that § 1920(4) does not restrict parties to bargain-basement exhibits. It further concludes that the computer-generated illustration of Tookes's injuries were an effective use of technology in the courtroom, and that the cost of illustrations was not

unreasonable.  Therefore, the Court approves taxation of the cost.

Accordingly, the Clerk shall increase the $13,232.90 award of costs by $3,234.68—for a total of $16,467.58—and enter judgment accordingly.

**SO ORDERED**.

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 9, 2015